IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  24-CR-00045-GKF-4 |
| | ) |
| LUIS GERARDO TREJO-ZAMBRANO, | ) |
| LUIS ANTONIO SORIA, | ) |
| BRYAN ULYSSES MARTINEZ, | ) |
| DARMEL DASHUN BATEMON, JR., | ) |
| MARCOS ZAMBRANO-RIVERA, JR., | ) |
| KALOB NATHANIEL BURTON, | ) |
| CHRISTOPHER YAHIR MARTINEZ, | ) |
| and CHRISTOPHER SABB, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the court on defendant Darmel Dashun Batemon, Jr.'s Motion to Dismiss Counts Three and Eight of the Second Superseding Indictment as Unconstitutional. [Doc. 190].  For the reasons set forth below, the motion is denied.

**Background/Procedural History**

On September 16, 2023, eight individuals were arrested outside of a nightclub near downtown Tulsa.  After searching the detainees and their two vehicles, Tulsa Police officers found ten (10) firearms evenly distributed between the vehicles, body armor, Oxycodone pills in a zip lock bag, loose marijuana, rolling papers, and a backpack containing marijuana, a functional digital scale, and an empty .40 caliber pistol magazine.

On May 21, 2024, a grand jury returned a Second Superseding Indictment charging Mr. Batemon with conspiracy and attempt to traffic firearms pursuant to 18 U.S.C. §§ 933(a)(3) and 933(b), transporting firearms in interstate commerce while under indictment pursuant to 18 U.S.C.

§§ 922(n) and 924(a)(1)(D), and interstate travel in aid of racketeering enterprises pursuant to 18 U.S.C. § 1952(a)(2). [Doc. 109]. Trial of this matter is scheduled to begin on October 15, 2024. [Doc. 187].

On September 3, 2024, Mr. Batemon filed his Motion to Dismiss Counts Three and Eight of the Second Superseding Indictment as Unconstitutional. [Doc. 190]. He argues that under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* two of the federal statutes under which Batemon has been charged are unconstitutional: 18 U.S.C. §§ 933 and 922(n). 597 U.S. 1 (2022). Specifically, Batemon contends that these statutes are not "consistent with the Second Amendment's text and historical understanding." *Id.* at 26. The government filed a response in opposition. [Doc. 196].

### *Bruen* Analysis

In *Bruen*, the Supreme Court considered a constitutional challenge to New York's licensing laws for firearms, which required a person to demonstrate that "proper cause exists" to issue a license to carry a firearm outside of the home. *Bruen*, 597 U.S. at 16. The Court, considering its prior decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), articulated the relevant inquiry as follows: "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. The proper analysis, under *Bruen*, is that

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). Thus, the test

2

"requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26.

To determine whether a firearms regulation is "consistent with the Nation's historical tradition of firearm regulation," district courts should consider "whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Id.* at 27 (quoting *Heller*, 554 U.S. at 631). The inquiry will often require "reasoning by analogy." *Bruen*, 597 U.S. at 28. "Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar,'" including both "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 28–29. Because self-defense lies at the core of the Second Amendment, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." *Id.* at 29 (emphasis in original) (quoting *McDonald*, 561 U.S. at 767). Significantly, however, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphasis in original).

Further, "when it comes to interpreting the Constitution, not all history is created equal." *Bruen*, 597 U.S. at 34. This is because "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Id.* (quoting *Heller*, 554 U.S. at 634–35) (emphasis in original). But the Court acknowledged that subsequent history may be relevant to the inquiry as "'a regular course of practice' can 'liquidate & settle the meaning of' disputed or indeterminate 'terms & phrases' in the Constitution." *Id.* at 35–36 (quoting *Chiafalo v. Washington*, 591 U.S. 578, 593 (2020)). However, "to the extent later history contradicts what the

3

text says, the text controls." *Id.* at 36. Applying these principles, the Court concluded that the New York licensing regime was unconstitutional in that it "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Bruen*, 597 U.S. at 71.

Notably, *Bruen* did not overturn *Heller* or *McDonald* or otherwise do away with the corpus of precedent issuing therefrom which this court is bound to follow. *See id.* at 17–18. Rather, *Bruen* provided the standard for evaluating the constitutionality of regulations on firearm possession and rejected the "means-end scrutiny" test which had been developed by the circuit courts. *Id.* at 18–19.

## As-Applied Challenge

Mr. Batemon argues that 18 U.S.C. §§ 933 and 922(n) are unconstitutional as applied to him. The substantive rule of law is the same for both facial and as-applied challenges. *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). Accordingly, the court must determine whether these statutes, as applied to Mr. Batemon, are consistent with the text and historical understanding of the Second Amendment. *Bruen*, 197 U.S. at 17.

    A.    *Presumptive Application of the Second Amendment*

The first step, pursuant to *Bruen*, is to consider whether the plain text of the Second Amendment covers Mr. Batemon's conduct. If so, "the Constitution presumptively protects [his] conduct." *Id.* at 24. The Second Amendment states that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

The government argues that "the plain text of the Second Amendment does not cover violations of § 933(a)." [Doc. 196, p. 10]. That statute makes it unlawful "for any person to ship,

transport, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony." 18 U.S.C. § 933(a)(1).  The challenged statute, the government argues, does not restrict gun ownership or self-defense for law abiding citizens, rather, it prohibits shipping, transporting, or disposing of firearms into the hands of someone for which it is a felony—an important distinction.

*Bruen* made clear that the right protected by the Second Amendment is that of carrying "a handgun for self-defense outside the home." 597 U.S. 1, 10 (2022).  On its face, the Second Amendment does not implicate the activity restricted by § 933.  The challenged statute prohibits straw purchases of firearms, whereby the possessor does not carry the firearm for self-defense, but to transfer it to another.  As the government points out in its brief, at least one other court has agreed with this differentiation.  *United States v. Sturgeon*, 23-6-DLB-CJS-1, 2023 WL 6961618, *2 (E.D. Ky. Oct. 20, 2023) ("the Second Amendment does not protect a right to purchase or transfer firearms for another person.").  The right protected by the Second Amendment's plain language does not encompass the kinds of activity prohibited by § 933.

On the other hand, 18 U.S.C. § 922(n) prohibits anyone who is under indictment for a felony from shipping, transporting, or receiving a firearm in interstate commerce.  The Second Amendment protects the right of "law-abiding citizens" to carry handguns for self-defense.  *Bruen*, 597 U.S. at 9.  A cornerstone of our legal system is that a criminal defendant is presumed innocent until proven guilty beyond a reasonable doubt.  *See Nelson v. Colorado*, 581 U.S. 128, 135–36 (2017).  In light of this axiom, it would be illogical to remove one under indictment from the category of "law-abiding citizens."  Although the challenged statute prohibits transferring firearms

to another—an activity not protected by the Second Amendment—it also touches the act of merely "transporting" a firearm in interstate commerce. § 922(n). As applied to one who is under indictment but presumed to be innocent and therefore a "law-abiding citizen" who may wish to carry a handgun for self-defense, this statute places restrictions on rights which are protected by the Second Amendment. Accordingly, the court concludes that § 933 does not touch on the rights protected by the Second Amendment, whereas § 922(n), in certain applications, does.

B.   *Historical Tradition of Firearm Regulation*

In light of the analysis *supra*, the court will consider whether the government has satisfied its burden to demonstrate that prohibiting anyone under indictment for a felony from shipping, transporting, or receiving a firearm in interstate commerce is consistent with historical regulations. 18 U.S.C. § 922(n); *Bruen*, 297 U.S. at 17.

Mr. Batemon challenges the constitutionality of § 922(n) under *Bruen* on two bases: (1) its recent vintage, and (2) that "no such societal problem has persisted or been regulated in the past." [Doc. 190, p. 3]. In response, the government proposes three historical analogues to § 922(n): (1) liberty restrictions on indicted defendants, (2) laws prohibiting firearm possession by dangerous persons, and (3) surety laws restricting firearm possession by people accused of posing a threat. [Doc. 196, p. 15].

It is well-established in American jurisprudence that the government has the authority under certain conditions to place significant liberty restrictions on individuals under indictment. *See, e.g.*, *U.S. v. Salerno*, 481 U.S. 739, 749 (1987) (noting "the well-established authority of the government, in special circumstances, to restrain individuals' liberty prior to or even without criminal trial and conviction"). A finding of probable cause for a felony indictment has historically justified pre-trial detention, oftentimes without bail. *See, e.g.*, *Kaley v. United States*, 571 U.S.

320, 330 (2014) (noting that probable cause is "often sufficient to 'restrain persons.'"); Judiciary Act of 1789, Ch. 20, § 33, 1 Stat. 73, 91–92 (1789) (one accused of a "crime or offence against the United States" may be "arrested, and imprisoned or bailed, as the case may be, for trial"); *and* ANTHONY HIGHMORE JR., A DIGEST OF THE DOCTRINE OF BAIL; IN CIVIL AND CRIMINAL CASES vii, 194–96 (1783) (noting that detention without bail is necessary for some so that "the safety of the people should be preserved against the lawless depredations of atrocious offenders").

The recent Supreme Court decision in *United States v. Rahimi* found that "temporary disarmament" was a "lesser restriction" than pre-trial "imprisonment." 144 S. Ct. 1889, 1902 (2024) (deciding a *Bruen* challenge to 18 U.S.C. § 922(g)(8), which restricts firearm possession by those under a restraining order who are found to pose credible physical threats to others). Considering the immemorial power of the federal government to detain individuals under indictment after a finding of probable cause, it follows that the "lesser restriction" of "temporary disarmament," which is in any case inherent during a pre-trial detention, is "consistent with the Nation's historical tradition of firearm regulation" in the context of pre-trial criminal defendants. *Id.*; *Bruen*, 597 U.S. at 24. Based on the foregoing, the government has satisfied its burden to present historical analogues showing a longstanding tradition of placing temporary restrictions on firearm possession by those credibly accused of a crime. This court therefore concludes that § 922(n) is consistent with the Second Amendment and the Nation's tradition of firearm regulation, including its application to Mr. Batemon as a person under felony indictment.

### Conclusion

WHEREFORE, the Motion to Dismiss Counts Three and Eight of the Second Superseding Indictment as Unconstitutional [Doc. 190] of defendant Darmel Dashun Batemon, Jr. is denied.

IT IS SO ORDERED this 20th day of September, 2024.



GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE